USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/12/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
CHARBERN MANAGEMENT GROUP LLC,  :
: 
                    Plaintiff,  :
      -against-  :
:    22-CV-8137 (VEC)
: 
BORAH, GOLDSTEIN, ALTSCHULER, :    OPINION & ORDER
NAHINS & GOIDEL, P.C., :
:
                    Defendant.  :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiff Charbern Management Group LLC ("Charbern" or "Plaintiff") sued Defendant Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. ("Borah" or "Defendant") for legal malpractice arising from Defendant's representation of Plaintiff in connection with the sale of real property in New York City. *See* Am. Compl., Dkt. 16. During the course of discovery, Plaintiff produced several redacted email communications that purportedly contain privileged communications between Plaintiff and its new counsel, Ira Nesenoff, an attorney that Plaintiff retained after its relationship with Defendant had deteriorated. *See* Def. Letter at 1, Dkt. 22. Defendant objects to those redactions. *See id.* Pursuant to the Undersigned's Individual Practices, the parties contacted Chambers to be heard on the discovery dispute, and, on April 26, 2023, the Court ordered the parties to brief their positions. *See* Order, Dkt. 21. The Court outlines below its conclusions with respect to Plaintiff's claim of privilege.

I.    **BACKGROUND**[1]

Plaintiff Charbern is a limited liability company with two members: the SCR Family Trust and the Bernice Roth Irrevocable Trust; both trusts are managed by their sole trustee, Roger Roth. Am. Compl. ¶ 6. In May 2019, Charbern retained Defendant to represent it in connection with the sale of a mixed-use property that included a few residential units. *See id.* ¶¶ 26, 30. Charbern alleges that it told Defendant that Charbern lacked "records that would confirm, support, and establish the deregulation of several of the [p]roperty's units" under New York's rent regulation laws. *Id.* ¶ 31.

In or around September 2019, Charbern received three offers to purchase the property and gave each prospective buyer a sales contract with which they could propose a purchase price and any other terms. *Id.* ¶¶ 33–34. After reviewing the proposals, Charbern gave the proposed contracts from the two highest bidders to Defendant for review. *See id.* ¶¶ 36–38. Defendant advised Charbern that neither contract posed a problem for a sale, and Charbern selected the highest bidder, BMSK LLC ("BMSK"). *Id.* ¶¶ 39–40. BMSK offered to purchase the property for $5,350,000; BMSK's proposed purchase contract contained as a condition for closing that "Charbern [] provide original written and notarized sales records and sales agreement [sic] for all prior occupancies" of the property's residential units to ensure "compliance with" the rent regulation laws. *Id.* ¶¶ 37, 44. Although Plaintiff had "previously discussed [with Defendant]

---

[1] For the purposes of this Motion, the Court assumes as true the facts alleged in Plaintiff's Amended Complaint.

that Charbern did not possess such records," *id.* ¶ 45, on September 27, 2019, Plaintiff and BMSK executed the contract with an agreed-upon closing date of March 27, 2020, *id.* ¶¶ 41–42.[2]

Charbern alleges that in March 2020, BMSK refused to schedule the closing "because Charbern had not yet fulfilled various requirements of the sales contract" and due to the burgeoning COVID-19 pandemic. *Id.* ¶¶ 47–48, 54–55. It was not until May 26, 2020, that Charbern allegedly learned from "an individual affiliated with BMSK" that the delay in closing was caused by Charbern's inability to fulfill the contract's preconditions regarding the residential units. *Id.* ¶ 56. On or about June 2020, Charbern retained new counsel. *Id.* ¶ 57. Plaintiff subsequently executed a new contract with BMSK for a reduced price of $4,300,000. *Id.* ¶ 59.

In its legal malpractice claim, Plaintiff alleges that Defendant failed to advise Charbern that it would be unable to fulfill a condition of the sales contract with BMSK, and that Defendant's negligence caused Plaintiff not to consider competing offers that lacked similar preconditions. *See id.* ¶¶ 64–70.[3] Defendant counterclaimed for breach of contract, alleging that Charbern failed to pay its outstanding invoices. *See* Ans. & Countercl. ¶¶ 80–85, Dkt. 17.

On April 26, 2023, the Court held a discovery conference to discuss a discovery dispute. *See* Order, Dkt. 21.[4] Defendant argues that Plaintiff improperly withheld as privileged communications with its successor counsel, Ira Nesenoff, relating to the sale of the property. *See* Def. Letter at 1. Defendant argues that communications with Nesenoff between May 2020 and

---

[2] The Amended Complaint alleges that the transaction was scheduled to close on March 27, 2022. *See* Am. Compl. ¶ 42. Based on other allegations and filings, the Court believes the year is a typographical error.

[3] Charbern also argues that Defendant is liable for $60,000 in legal fees it incurred when it engaged new counsel to assist in the sale of the property, and "carrying costs of approximately $17,000 per month in connection with owning the property for eight months beyond the original closing date." Am. Compl. ¶¶ 71–72.

[4] Because the parties waived their rights to a court reporter for the call, there is no transcript of the conference.

July 2020 are not privileged because, during that period, Defendant and Nesenoff "simultaneously represented [P]laintiff in the transaction."[5]  *Id.*  Separately, Defendant argues that communications with Nesenoff during the period from May 2020 to November 2020 are subject to the "at-issue" waiver doctrine.  *Id.*  Defendant moves to compel the production of those documents, or, alternatively, subject the documents to *in camera* review to determine the propriety of the privilege claims.  *Id.*

## II.   GOVERNING LAW[6]

In New York, "[t]he attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 623 (2016) (citing N.Y. C.P.L.R. § 4503(a)(1)).  The privilege, however, is to be "narrowly construed." *Id.* at 624.  That an attorney is present on a communication does not automatically shield it from disclosure; to qualify as privileged, the communication must be "generated for the purpose of obtaining or providing legal advice as opposed to business advice." *Argos Holdings Inc. v. Wilmington Tr. Nat'l Ass'n*, 2019 WL 1397150, at *3 (S.D.N.Y. Mar. 28, 2019) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).

---

[5]  Plaintiff disputes that there was concurrent representation between Defendant and Nesenoff.  Pl. Opp. at 4, Dkt. 23.  Because the issue is not outcome determinative, the Court assumes for purposes of Defendant's motion, without deciding, that there was a period of simultaneous representation.

[6]  Because this Court's subject matter jurisdiction is premised on diversity, New York law on privilege governs, although "New York law on attorney-client privilege is substantially similar to the federal doctrine." *AP Links, LLC v. Russ*, 2012 WL 3096024, at *2 n.6 (E.D.N.Y. July 30, 2012) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993)).

...
...

...

Attorney work product is also protected from disclosure under federal law. *See* Fed. R. Civ. P. 26(b)(3); *see also Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015). "Documents prepared in anticipation of litigation are work product, even when they are also intended to assist in business dealings." *Schaeffler*, 806 F.3d at 43. By contrast, "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the [prospect of] litigation" are not protected by the attorney work product doctrine. *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

In New York, an "at-issue" waiver occurs when "a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information."[7] *Windsor Secs., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017) (quoting *Deutsche Bank Tr. Co. of Ams. v. Tri–Links Inv. Tr.*, 43 A.D.3d 56, 63 (1st Dep't 2007)). Underpinning the doctrine is a fundamental notion of fairness to the party whose adversary relies on privileged communications for its claim or defense while "depriv[ing] the opposing party of the means to test those factual assertions through discovery of those communications." *Id.*

Broad though it is, the "at-issue" waiver doctrine does not apply "merely because privileged information is relevant to the issues being litigated;" to apply, the party asserting

---

[7] New York courts frequently cite to federal case law in applying the "at-issue" waiver doctrine. *See, e.g.*, *People v. Kozlowski*, 11 N.Y.3d 223, 245–46 (2008); *Deutsche Bank Tr. Co. of Ams. v. Tri-Links Inv. Tr.*, 43 A.D.3d 56, 63–64, 66, 69 (1st Dep't 2007). Because the doctrine is applied essentially the same way in state and federal court, the Court relies on both state and federal law. *See generally Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010) (noting that New York law follows Second Circuit law on aspects of the "at-issue" waiver doctrine); *Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc.*, 1998 WL 414933 at *1 n.1 (S.D.N.Y. July 23, 1998) ("[T]he law in New York concerning [the "at-issue"] waiver theory parallels federal law.") (citation omitted); *accord Chin v. Rogoff & Co., P.C.*, 2008 WL 2073934, at *5 n.11 (S.D.N.Y. May 8, 2008).

privilege must have "asserted a claim or defense that he intends to prove by use of the privileged materials." *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010) (quoting *Deutsche Bank Tr.*, 43 A.D.3d at 23)). In other words, the party asserting privilege must rely on the otherwise privileged advice to prove its case in order to put the communication "at issue." *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).

## III.   DISCUSSION

This discovery dispute was ignited when Plaintiff inadvertently produced a document in which, days before the November 9, 2020, closing, Plaintiff asked Nesenoff whether BMSK had "ever confirm[ed] via email that the buyouts were sufficient." Def. Letter at 3.[8] Defendant now moves to compel production of all communications between Plaintiff and Nesenoff that occurred between May and November of 2020. *See* Def. Letter at 1.

In New York, legal malpractice requires a showing that: (1) the attorney was negligent; (2) the negligence was the proximate cause of the plaintiff's injury; and (3) the plaintiff suffered actual damages. *Collins v. Felder*, 785 F. App'x 8, 10 (2d Cir. 2019) (citations omitted). Defendant argues that Plaintiff's communications with overlapping counsel in the months during and leading up to the closing bear directly on whether Plaintiff's alleged damages — particularly, the reduced sale price — were caused by Defendant's alleged negligence. *See* Def. Letter at 4; *see also* Am. Compl. ¶ 68–70.

Defendant asserts two bases for its argument that those documents are not privileged: first, there was joint representation between May and July of 2020, *see* Def. Reply at 2, Dkt. 24,

---

[8]   Plaintiff states that it will "request the return of the privileged email" referenced in Defendant's Letter based upon the Court's ruling herein. Pl. Opp. at 3 n.1. Because that particular document has not been a subject of the parties' letters, the Court declines the implicit invitation to rule on the propriety of Plaintiff's claim of privilege over it.

6

and second, Plaintiff placed those communications "at issue" in the malpractice case, thereby waiving the privilege, Def. Letter at 5.

Defendant's arguments rest on flimsy authority. As Plaintiff points out, the Second Circuit has instructed federal courts to avoid following a line of cases that interpreted the "at-issue" waiver doctrine in a way that "cut[] too broadly." *In re Cnty. of Erie*, 546 F.3d at 229. The Second Circuit reined in that broad interpretation by expressly requiring some showing by the party arguing at-issue waiver that the party asserting privilege is relying or intends to rely on privileged advice to advance a claim or defense. *Id.*; *see also Secs. & Exch. Comm'n v. Honig*, 2021 WL 5630804, at *6 (S.D.N.Y. Nov. 30, 2021). Without the "essential element of reliance," challenges to privilege over relevant documents that reflect the rendering of legal advice would open the door to production of a host of protected communications based on their relevance alone, a position that would threaten the necessary protections afforded by attorney-client privilege. *See In re Cnty. of Erie*, 546 F.3d at 229.

Defendant correctly argues that *Erie* was not a diversity case, and the decision was not grounded in New York privilege law. *See* Def. Reply at 2 n.1. But many, if not most, New York courts have since taken heed of the Second Circuit's warning and followed suit. *See, e.g.*, *Alekna v. 207-217 W. 110 Portfolio Owner LLC*, 188 A.D.3d 553, 554 (1st Dep't 2020) ("An 'at issue' waiver occurs when a party has asserted a claim or defense that it intends to prove *by the use of* the privileged material" (emphasis added)).

That rule does not change for legal malpractice cases. Defendant misstates the law by arguing that, when bringing a legal malpractice claim, a plaintiff automatically waives privilege over communications with a non-defendant law firm when there was simultaneous representation in the relevant matter. Def. Letter at 4 (citing *Bank Brussels Lambert v. Credit Lyonnais*

*(Suisse), S.A.*, 210 F.R.D. 506, 511 (S.D.N.Y. 2002)). Even in cases of simultaneous representation, courts in this district have consistently applied the rule articulated in *Erie*: the critical, if not dispositive, question is reliance. *See Windsor Secs., LLC*, 273 F. Supp. at 521–23 (collecting New York malpractice cases); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 2009 WL 3111766, at *16 n.6 (S.D.N.Y. Sept. 28, 2009) (citing and agreeing with the Second Circuit's criticism of *Bank Brussels Lambert*). This Court shares the prevailing view that reliance is necessary to invoke the "at-issue" waiver doctrine, even in the face of simultaneous representation.

Plaintiff's malpractice claim stems from advice it received from Defendant in connection with Plaintiff's decision to execute a contract to sell the property to BMSK. *See generally* Am. Compl.; *see also* Def. Reply at 2. To establish its malpractice claim, Plaintiff will need to show, among other things, that Defendant was negligent when it failed to advise Plaintiff, before Plaintiff decided to execute the agreement, that the contract contained a closing obligation that Defendant knew or should have known Plaintiff could not fulfill. *See* Pl. Opp. at 2, Dkt. 23. What the parties knew or did not know at the time the contract was executed is highly relevant to prove Plaintiff's malpractice claim. But the Court sees no possibility that Plaintiff will rely on statements it made to its new attorney, several months later, in order to prove that Defendant committed malpractice when it advised Plaintiff that the contract was acceptable.

Plaintiff will also have to prove that its inability to meet the condition regarding the buyout agreements — and not the COVID-19 pandemic, the loss of the ground-floor retail tenant, or any other event that occurred between signing the contract and closing — caused Plaintiff's damages. Plaintiff's communications with BMSK regarding BMSK's unwillingness to close at the initial agreed-upon price will likely be highly relevant to Plaintiff's claims;

Plaintiff's communications with its own lawyer regarding what it should do in the face of those difficulties are not "at issue" and are privileged.

Defendant presses its case on waiver by pointing to an email from Plaintiff to its attorney asking whether BMSK deemed the "buyout agreements" to be "sufficient" for the closing. Def. Reply at 3. According to Defendant, if BMSK deemed those agreements sufficient — i.e., if the answer to Plaintiff's question in the inadvertently produced email was "yes" — then Plaintiff's claim fails. *Id.* That may or may not be true, but if it is true, the best source for that information would be communications between BMSK and Plaintiff or Plaintiff's attorney — communications that are not privileged.[9]

To be sure, Defendant may be entitled to the communications between Plaintiff and Nesenoff regarding the amended contract with BMSK if, for some reason, Plaintiff comes to rely on those communications at a later stage. But as of today, Defendant has not shown that Plaintiff will rely in any way on its communications with Nesenoff to prove that Defendant committed malpractice, to prove that Defendant's purported malpractice was the cause of its damages, or to prove the extent of its damages. For that reason, *in camera* review of documents Plaintiff has withheld as privileged is not warranted.[10]

---

[9]   Defendant's argument that the email's redacted response is "critical" to defend against Plaintiff's claims, even if a valid interpretation of the law, is unpersuasive: Defendant claims to have access to "documents contained in both parties' production" that "unquestionably reveal numerous other factors that appear to have caused BMSK to demand a reduced sale price which have nothing to do with the buyouts." Def. Reply at 3. That being the case, it is a mystery why, "[t]o achieve fairness and allow the defendant to prepare its defense," Defendant is broadly "entitled to all communications between [P]laintiff and Nessenoff [sic] pertaining to the sufficiency of the buyouts" or any of the remaining topics broadly cited by Defendant. *Id.*

[10]   The Court declines to weigh in on whether the inadvertently produced email can be clawed back by Plaintiff. This opinion concerns only Defendant's broad claims of entitlement to categories of documents redacted by Plaintiff; the Court lacks sufficient information to evaluate claims of privilege as to any individual document or email produced in this litigation.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to compel is DENIED without prejudice.

The Clerk of Court is respectfully directed to close the open motion at docket entry 22.

**SO ORDERED.**

**Date:  June 12, 2023**
**New York, New York**

                                                                                                _____
                                                                                                **VALERIE CAPRONI**
                                                                                                **United States District Judge**